UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE OF WASHINGTON
DEPARTMENT OF HEALTH,

Plaintiff,

v.

THE GEO GROUP, INC.,

Defendant.

CASE NO. C24-5029 BHS

ORDER

This matter is before the Court on the State of Washington Department of Health

(DOH)'s motions to remand this matter to the Thurston County Superior Court, Dkt. 10;

to consolidate this matter with *Dep't of Labor and Indus. v. GEO Secure Serv., LLC*, No.

C24-5095 BHS, Dkt. 16; and to preliminary enjoin the GEO Group, Inc., from denying

the agency access to inspect the Northwest ICE[1] Processing Center (the NWIPC)—the

sole immigration detention facility in Washington which GEO operates pursuant to a

contract with ICE. Dkt. 24. DOH seeks such an injunction pursuant to both HB 1470 § 3[2]

---

[1] Immigration and Customs Enforcement.

[2] HB 1470 § 3 is codified as RCW 70.395.050.

ORDER - 1

(a law requiring DOH to inspect "private detention facilities" for conditions related to food service and handling, sanitation, hygiene, and nutrition) and RCW 43.70.170 (a statute authorizing DOH to inspect any place containing a condition constituting a threat to the public health).

GEO removed the action to this Court under the "federal officer" removal statute, 28 U.S.C. §1442(a)(1). This statute generally provides that any person acting under an officer or agency of the United States may remove an action to federal court when that person can assert a "colorable federal defense." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

GEO asserts a colorable federal defense to DOH's efforts to inspect the NWIPC under HB 1470 § 3. In a recent order in a related case, this Court ruled that HB 1470 § 3 is unconstitutional as applied to GEO as the operator of the NWIPC. *See The GEO Group, Inc. v. Inslee*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at *24–26 (W.D. Wash. Mar. 8, 2024). The Court explained that HB 1470 "was designed to apply to only the NWIPC and any other private immigration detention facility that may eventually exist in Washington" and that "§ 3 discriminates against [GEO] in violation of the intergovernmental immunity doctrine." *Id.* at *16, 26. The Court preliminarily enjoined the State and its agencies, including DOH, from enforcing HB 1470 § 3 against GEO. *Id.* at *30. DOH's motion to remand is accordingly denied.

The Court also declines to consolidate this case with *Dep't of Labor and Indus.*, No. C24-5095 BHS. Because DOH is not entitled to inspect the NWIPC under HB 1470 § 3, the primary remaining issue in this case is whether it is entitled to do so under RCW

ORDER - 2

43.70.170. This statute authorizes DOH to inspect any condition constituting a threat to the public health. By contrast, the primary issue in *Dep't of Labor and Indus.*, No. C24-5095 BHS, is whether the Department of Labor & Industries (L&I) is entitled to inspect the NWIPC under an entirely different statute, RCW 49.17.070. That statute authorizes L&I to conduct reasonable inspections of any workplace under certain circumstances. These cases concern different statutes and, in turn, involve different questions of law and fact. The motion to consolidate is denied.

Nor will the Court issue a preliminary injunction in this case. To the extent DOH seeks an injunction under HB 1470 § 3, such relief is plainly foreclosed by the Court's order declaring that law to be unconstitutional as applied to GEO. *See Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26. To the extent DOH seeks an injunction pursuant to RCW 43.70.170, it lacks constitutional standing. Before filing this lawsuit, DOH *never* attempted to inspect the NWIPC pursuant to this statute. The Court must therefore speculate as to whether GEO would have denied DOH access to the NWIPC had the agency cited and explained the suspected conditions that constitute "a threat to the public health," as that phrase is used in the statute. Under these circumstances, DOH fails to establish an injury in fact or that its asserted injury is fairly traceable to GEO's conduct. DOH's claim under RCW 43.70.170 is accordingly dismissed without prejudice and without leave to amend, and the motion for a preliminary injunction is denied.

## I.    BACKGROUND

In 2023, the Washington legislature enacted HB 1470, which amended chapter 70.395 RCW to impose numerous requirements on "private detention facilities."

ORDER - 3

Following the passage of this law, GEO sued Washington's governor, Jay Inslee, and attorney general, Robert Ferguson, in a different case before this Court, seeking to enjoin the enforcement of HB 1470 against it as the operator of the NWIPC. *See* Dkt. 1 in *Inslee*, No. C23-5626 BHS. GEO claimed, among other things, that HB 1470 is unconstitutional as applied to it because the law impermissibly discriminates against it in violation of the Supremacy Clause's intergovernmental immunity doctrine. *Id.* ¶¶ 74–83.

Between April 2023 and December 2023, DOH received 277 complaints from detainees at the NWIPC. Dkt. 12, ¶ 6. These complaints were "generally about lack of attention to medical needs, contaminated food, insufficient food, dirty cloths and bedding, mistreatment of detainees, and hunger strikes." *Id.*

Some of these complaints asserted that various medical conditions suffered by detainees, such as "stroke, paralysis, heart conditions, internal bleeding, and asthma," have not been "addressed by GEO." Dkt. 12, ¶ 7. For example, "[o]ne detainee asked to be taken to the hospital but was refused," and "[a]nother broke their arm and was given only Ibuprofen for the pain and it took several days before the arm was placed in a cast." *Id.*

Detainees have also "complained that the food provided to them has contained foreign objects including burned plastic, metal string, rope and splinters" and that the "food is of low-quality and is typically soy-based meat substitutes made into tacos or served over pasta." Dkt. 12, ¶ 8. One detainee with a "medically-prescribed diet to include fruits and vegetables was refused such a diet." *Id.* Detainees have complained

that "the food tastes bad, smells bad, makes their stomach hurt, and they do not receive enough to eat." *Id.*

Detainees have further complained that that "their clothing, sheets, and blankets are rarely changed or laundered, and when laundered, are returned wet and dirtier than before." Dkt. 12, ¶ 9. They have also reported that "the facility is unsanitary; bathrooms are rarely cleaned, the toilets are often blocked, floors go upswept, and the facility smells like a dirty bathroom." *Id.* ¶ 10.

In response to such complaints, DOH officials attempted to inspect the NWIPC on two separate occasions. First, on November 14, 2023, two DOH officials, Miko Nanto and Amanda Soleil Maria Muñiz, visited the facility and Nanto informed the NWIPC's facility administrator, Bruce Scott, that they "were at the facility due to the passing of HB 1470 that allows DOH to conduct investigations and inspections regarding health and safety complaints." Dkt. 12, ¶ 14; *see also* Dkt. 19. Scott informed Nanto and Muñiz that, "due to active litigation," they were "not allowed to enter." Dkt. 12, ¶ 14. At this time, GEO had already filed its motion for a preliminary injunction in *Inslee*, No. C23-5626 BHS, and the Court had not yet entered its March 2024 order declaring HB 1470 § 3 to be unconstitutional as applied to GEO. Nanto asked Scott if he was refusing entry, and Scott "agreed." Dkt. 12, ¶ 14. Nanto and Muñiz then left.

At no point during this visit did Nanto or Muñiz request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 13, 14.

Next, on November 27, 2023, Nanto, Muñiz, and another DOH official, Lauren Jenks, visited the NWIPC and Nanto informed the guard that they were "with" DOH and "were there to investigate complaints." Dkt. 12, ¶ 15. They asked to speak to Scott, who subsequently arrived and "asked what [their] visit was regarding." *Id.* Nanto responded that they were there "to investigate complaints" concerning "laundry services and health care." *Id.* Scott expressed that "they were not used to DOH coming to their facility," and Muñiz "talked a little about the passing of HB 1470." *Id.* Scott expressed that "these types of inspections hadn't happened in previous years," and Muñiz explained that "HB 1470 was just recently passed." *Id.* Scott went "upstairs to speak with ICE representatives" and, upon his return, he denied the DOH officials access to the facility "due to the ongoing litigation." *Id.* ¶ 16.

At no point during this visit did Nanto, Muñiz, or Jenks request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 15, 16.

DOH sued GEO in Thurston County Superior Court, asserting that GEO "has twice refused the Department from entering the NWIPC, as it is required to do under RCW 70.395 [HB 1470]." Dkt. 1-2, ¶ 5.3. Despite never seeking to inspect any suspected threats to the public health during those two prior visits, DOH also asserts the agency "has authority to investigate public health threats and to enter buildings to do so. RCW 43.70.170." *Id.* ¶ 2.2. DOH contends that, "[b]ecause of the actions of GEO Group, the Department is unable to carry out its statutory obligations under RCW 70.395 [HB 1470]

ORDER - 6

and RCW 43.70.170." *Id.* ¶ 5.7. DOH seeks to enjoin GEO from denying it access to the NWIPC to conduct inspections pursuant to these laws. *Id.* ¶ 6.1.

After DOH filed its complaint, its officials returned to the NWIPC on three more occasions. On December 21, 2023, Nanto and Muñiz returned to the NWIPC "for informational purposes" only and were "not trying to enter the facility." Dkt. 12, ¶ 18. They provided Scott "information on how to get involved with [DOH's] current rulemaking[3] and let him know that both GEO and ICE could be as involved as they would like." *Id.* Nanto also informed Scott that DOH received a complaint from a detainee who was deaf and claiming violations of the Americans with Disabilities Act. *Id.* Nanto explained that DOH forwarded this complaint to both the Office of the Immigration Detention Ombudsman and the U.S. Department of Health and Human Services' Office of Civil Rights. *Id.* Nanto and Muñiz finally explained that DOH received complaints regarding "the women's pods not being able to receive clean undergarments and allegations they were unclean or used." *Id.* Nanto and Muñiz then left. *Id.*

At no point during this visit did Nanto or Muñiz request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 17–19.

---

[3] Presumably, the referenced rulemaking process concerned rules adopted pursuant to HB 1470, which requires DOH to "adopt rules . . . to ensure private detention facilities allow regular inspections and comply with measurable standards providing sanitary, hygienic, and safe conditions for detained persons." RCW 70.395.050(3); *see also* RCW 70.395.040 (detailing numerous standards that DOH must impose on private detention facilities under such rules).

ORDER - 7

On January 16, 2024, Muñiz and another DOH official, Kaye Eckmann, visited the NWIPC and spoke to Scott and another GEO employee. Dkt. 12, ¶¶ 20–22. Muñiz informed them that DOH received "complaints about the windows being painted over and not allowing natural light into the area where detainees are held." *Id.* ¶ 23. Muñiz and Eckmann then left. *Id.* ¶ 24.

At no point during this visit did Muñiz or Eckmann request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 20–24.

On February 28, 2024, Muñiz and Eckmann returned to the NWIPC and spoke to Scott and "Mr. Santiago," the supervisor of the facility. Dkt. 42, ¶¶ 6–8; Dkt. 43, ¶¶ 5–13. Eckmann informed them that DOH received complaints that "[t]he bathrooms and showers were dirty and there were fungal infections on detainees' feet," "[t]he food was, at times, being served late and sometimes several hours late," and "[t]he HVAC[4] system/heating system was possibly malfunctioning and that it was cold at night, and detainees were asking for additional blankets because they were cold." Dkt. 43, ¶ 11. Eckmann informed Scott and Santiago that she "just wanted to be transparent with them." Dkt. 42, ¶ 8. Muñiz and Eckmann then left. Dkt. 42, ¶ 8; Dkt. 43, ¶ 13.

At no point during this visit did Muñiz or Eckmann request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 42, ¶¶ 6–8; Dkt. 43, ¶¶ 5–13.

---

[4] Heating, ventilation, and air conditioning.

GEO removed the case to this Court under the "federal officer" removal statute, 28 U.S.C. §1442(a)(1). Dkt. 1. GEO asserts that it is entitled to remove the case pursuant to this statute because it has "colorable federal defenses to Plaintiff's claims," including that HB 1470 § 3 impermissibly discriminates against it in violation of the Supremacy Clause's intergovernmental immunity doctrine. *Id.*, ¶ 18, 29–31.

DOH moves to remand this matter to the Thurston County Superior Court, arguing that the federal officer removal statute does not apply because GEO is unable to assert a colorable federal defense. Dkt. 10 at 1–2. DOH also moves to consolidate this matter with *Dep't of Labor and Indus.*, No. C24-5095 BHS. Dkt. 16. In that case, L&I seeks to enjoin GEO from denying it access to the NWIPC so that L&I may inspect the facility under both HB 1470 § 3 (which also requires L&I to inspect workplace conditions at private detention facilities) and RCW 49.17.070 (which authorizes L&I to inspect conditions at workplaces generally). Dkt. 1-3 ¶¶ 21, 30, in No. C24-5095 BHS. DOH finally moves to preliminarily enjoin GEO from denying it access to the NWIPC to conduct inspections under both HB 1470 § 3 and RCW 43.70.170, arguing that these laws plainly require GEO to provide the agency such access. Dkt. 24 at 3.

After DOH filed these motions, the Court entered its order in *Inslee* declaring HB 1470 § 3 to be unconstitutional as applied to GEO as the operator of the NWIPC. ___ F. Supp. 3d. ___, 2024 WL 1012888, at *24–26. The Court ruled that this law impermissibly discriminates against GEO in violation of the Supremacy Clause's intergovernmental immunity doctrine. *Id.* The Court preliminarily enjoined "[t]he State

and its agencies" from enforcing HB 1470 § 3 against GEO as the operator of the NWIPC. *Id.* at *30.

That order materially affects the merits of DOH's motions.

## II.   DISCUSSION

**A.      DOH's motion to remand is denied because GEO asserts a colorable federal defense.**

DOH contends that, to remove this case under 28 U.S.C. § 1442(a)(1), GEO must assert a "colorable federal defense" justifying its act of denying DOH access to the NWIPC and that GEO is unable to assert such a defense. Dkt. 10 at 1. DOH does not dispute that GEO satisfies the remaining requirements of this statute. *See generally id.*

GEO responds that its notice of removal asserts numerous colorable federal defenses, one of which is that HB 1470 § 3 impermissibly discriminates against it in violation of the Supremacy Clause's intergovernmental immunity doctrine. Dkt. 17 at 23–24.

The federal officer removal statute allows persons acting under a federal officer or agency to remove an action to federal court when the action relates to any act performed under color of federal office:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

"The purpose of the federal officer removal statute is 'to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties.'" *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). "The right of removal is 'absolute for conduct performed under color of federal office,' and the 'policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted) (quoting *Manypenny*, 451 U.S. at 242).

A party seeking removal under § 1442(a)(1) "bears the burden of showing that (a) it is a 'person'[5] within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

When an action is properly removed under § 1442(a), the district court has "the power to hear claims that would not be independently removable." *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1975). Indeed, if "some of the [plaintiffs'] allegations . . . do not relate to the [defendants'] acts under color of federal office, 'removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only

---

[5] "[C]orporations are 'person[s]' under § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244.

apply to one claim to remove the case.'" *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020) (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017)).

DOH does not dispute that GEO satisfies the first two requirements for removal under §1442(a)(1). It instead argues that GEO is unable to assert a colorable federal defense. The Court disagrees. One of the defenses asserted in GEO's notice of removal is that HB 1470 § 3 impermissibly discriminates against GEO in violation of the intergovernmental immunity doctrine. Dkt. 1, ¶¶ 29–31. Under this Court's order in *Inslee*, this defense is not only colorable, but valid. *See* ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26. For this reason alone, DOH's motion to remand is **DENIED**.

**B.      DOH's motion to consolidate is denied because this matter is not sufficiently similar to *Dep't of Labor and Indus.*, No. C24-5095 BHS.**

DOH moves to consolidate this matter with *Dep't of Labor and Indus.*, No. C24-5095 BHS, asserting that these two cases are "very similar" because they "involv[e] two state agencies, the same Defendant, the same facility, roughly the same time frame, and nearly identical legal arguments." Dkt. 16 at 2. GEO responds that, considering this Court's order in *Inslee*, the issues in these cases are not sufficiently similar to warrant consolidation. Dkt. 35 at 5. GEO contends that the primary issue in this case is whether DOH is entitled to inspect the NWIPC for any "threat to the public health" under RCW 43.70.170, whereas the primary issue in *Dep't of Labor and Indus.*, No. C24-5095 BHS, is whether L&I is entitled to inspect the NWIPC for workplace hazards under RCW 49.17.070. *Id.* at 9.

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989).

Judicial convenience is not served by consolidating these two cases. The only similar claims in these cases are DOH's and L&I's claims that they are each entitled to inspect the NWIPC under HB 1470 § 3. These claims are easily resolvable considering the Court's order declaring HB 1470 § 3 to be unconstitutional as applied to GEO as the operator of the NWIPC. *See Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26.

The remaining claims in these cases are not similar. DOH seeks to inspect the NWIPC pursuant to a statute authorizing it to inspect "any . . . place" containing "any article or condition constituting a threat to the public health including, but not limited to, outbreaks of communicable diseases, food poisoning, contaminated water supplies, and all other matters injurious to the public health." RCW 43.70.170. L&I seeks to inspect the NWIPC pursuant to an entirely different statute authorizing it to inspect "any . . . workplace" "in carrying out [its] duties under" the Washington Industrial Safety and Health Act (WISHA). RCW 49.17.070(1)(a)–(b). These cases accordingly present different legal issues.

DOH and L&I also attempted to inspect the NWIPC at different times and under different circumstances. DOH attempted to inspect the NWIPC on two occasions in November 2023. Dkt. 12, ¶¶ 13–16. During these visits, DOH sought to inspect the facility pursuant to *only* HB 1470 § 3. *Id.* It did *not* attempt to inspect the facility under RCW 43.70.170. *See id.* By contrast, L&I attempted to inspect the NWIPC on two occasions in December 2023. Dkt. 27-2, ¶ 4; Dkt. 27-5 at 4, in No. C24-5095 BHS. During its second visit to the NWIPC, L&I attempted to inspect the facility pursuant to a state court search warrant, which expressly stated that L&I was authorized to inspect the NWIPC under HB 1470 *and* WISHA, chapter 49.17 RCW.[6] *See* Dkt. 27-6 at 3, in No. C24-5095 BHS.

Because DOH never attempted to inspect the NWIPC under RCW 43.70.170, an issue exists as to whether it has constitutional standing to seek an injunction pursuant to this statute. L&I does not face a similar problem.

These actions accordingly do not involve sufficiently common issues of law or fact to warrant consolidation. DOH's motion to consolidate, Dkt. 16, is **DENIED**.

**C.     DOH's motion for a preliminary injunction is denied in part on the merits and denied in part as moot for lack of constitutional standing.**

DOH moves to preliminarily enjoin GEO from denying it access to inspect the NWIPC pursuant to both HB 1470 § 3 and RCW 43.70.170, arguing that these laws plainly require GEO to provide the agency such access. Dkt. 24 at 3, 8–9, 12.

---

[6] The warrant also stated that L&I was entitled to inspect the NWIPC under Title 296 WAC. Dkt. 27-6 at 3, in No. C24-5095 BHS.

GEO responds that, considering this Court's order in *Inslee*, DOH "has no chance of succeeding on the merits because its attempts to enter, inspect, and enforce HB 1470 are unconstitutional under the doctrine of Intergovernmental Immunity due to impermissible discrimination." Dkt. 37 at 19. GEO also contends that DOH never attempted to inspect the NWIPC under RCW 43.70.170 and argues that, under these circumstances, DOH's entitlement to do so presents "a purely hypothetical question, raising an issue that is not prudentially ripe." Dkt. 37 at 6–7.

DOH's reply acknowledges this Court's order enjoining it from enforcing HB 1470 § 3 against GEO, but asserts that the order was wrongly decided: "Although the Court partially enjoined HB 1470, DOH & L&I do not concede that HB 1470 is unconstitutional." Dkt. 41 at 3 n.3. It also maintains that its "general authority under RCW 43.70.170 . . . is sufficient to obtain the injunctive relief sought here." *Id.*

To obtain preliminary injunctive relief, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of such relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020).

DOH's claim seeking an injunction under HB 1470 § 3 is plainly foreclosed by this Court's order in *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26, 30. That order declared HB 1470 § 3 to be unconstitutional as applied to GEO, and preliminarily

enjoined "[t]he State and its agencies" from enforcing HB 1470 § 3 against it. *Id.* at *30. To the extent DOH seeks a preliminary injunction allowing it to inspect the NWIPC under HB 1470 § 3, its motion is **DENIED**.

DOH also lacks constitutional standing to seek an injunction under RCW 43.70.170. *See B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing.").[7] Article III of the Constitution confines "[t]he judicial Power of the United States" to "Cases" and "Controversies." U.S. CONST. art. III, §§ 1, 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. An injury in fact is "an invasion of a legally protected interest which is" "concrete and particularized" and "'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

---

[7] Although GEO raises this issue in the context of prudential ripeness, *see* Dkt. 37 at 6–7, it is more-appropriately examined in the context of constitutional standing.

ORDER - 16

DOH fails to establish an injury in fact. The agency has *never* attempted to inspect the NWIPC pursuant to RCW 43.70.170. *See* Dkt. 12, ¶¶ 13–24; Dkt. 42, ¶¶ 6–8; Dkt. 43, ¶¶ 5–13. Rather, each of the two times it attempted to inspect the NWIPC before filing this lawsuit, it sought to do so pursuant to *only* HB 1470 § 3. Dkt. 12, ¶¶ 13–16. GEO denied DOH access on that basis alone, stating that the agency was not allowed to enter the facility because of the "active" and "ongoing" litigation in *Inslee*, No. C23-5626 BHS. *Id.* ¶¶ 14, 16. That case concerns GEO's challenges to the validity of only HB 1470: it does not concern whether DOH is entitled to inspect the NWIPC under RCW 43.70.170.

Even after DOH filed its complaint in this case, expressing—for the first time—its belief that it is also entitled to inspect the NWIPC under RCW 43.70.170, DOH officials returned to the NWIPC on *three* occasions and, again, they did *not* request to inspect the facility under this statute. *See* Dkt. 12, ¶¶ 18, 22–23; Dkt. 42, ¶¶ 6–8; Dkt. 43, ¶¶ 5–13. Given DOH's failure to do so, it unsurprisingly never expressed to GEO its apparent belief that the suspected conditions at the NWIPC constitute threats to the public health, as that term is used in the statute.

DOH's claim is based purely on conjecture: because GEO denied DOH access to inspect the NWIPC under HB 1470 § 3, it would have also denied DOH access to inspect the facility under RCW 43.70.170. *See Lujan*, 504 U.S. at 560 (Article III requires the plaintiff to show that its asserted injury is "concrete and particularized" and "actual or imminent, *not conjectural or hypothetical*" (emphasis added) (internal quotation marks omitted) (quoting *Whitmore*, 495 U.S. at 155)).

But HB 1470 § 3 and RCW 43.70.170 are entirely different laws, addressing different types of harm and imposing different standards on the facilities subject to them. On the one hand, HB 1470 § 3 requires DOH to conduct "routine, unannounced inspections of private detention facilities, including, but not limited to, inspection of food service and food handling, sanitation and hygiene, and nutrition." RCW 70.395.050(1)(a). On the other hand, RCW 43.70.170 authorizes DOH to inspect "any . . . place" containing "any article or condition constituting a threat to the public health including, but not limited to, outbreaks of communicable diseases, food poisoning, contaminated water supplies, and all other matters injurious to the public health."

GEO persuasively asserts that DOH "has made no showing whatsoever that a statutory 'threat to public health' motivated its attempts to gain access to the NWIPC in November 2023." Dkt. 37 at 11 n.3. Even now, DOH fails to explain how, exactly, the suspected conditions at the NWIPC constitute a threat to the public health. *See generally* Dkts. 24, 41. DOH states that it has "received 277 complaints from detainees at NWIPC, detailing unsafe and unsanitary conditions," such as "food . . . contain[ing] burned plastic, metal string, rope, and splinters" and "clothing and blankets [being] rarely changed or laundered, and when laundered, [being] returned dirtier than before." Dkt. 24 at 9. In its reply, DOH asserts that it has also "received reports of suicide attempts and detainees with suicidal ideation." Dkt. 41 at 11.[8]

---

[8] GEO moves to strike two declarations that DOH filed in support of its reply brief. Dkt. 45. This motion is **DENIED**.

ORDER - 18

Although the reported conditions at the NWIPC may indeed pose a threat to the health of individual detainees, it is not clear whether or how they constitute a "threat to the *public* health," meaning "outbreaks of communicable diseases, food poisoning, contaminated water supplies," and the like. RCW 43.70.170 (emphasis added); *see Green v. Pierce County*, 197 Wn.2d 841, 853 (2021) (under traditional canons of construction, "the meaning of a general word is construed consistent with the specific terms in the statute" and a "word's meaning is determined by its relation to other words in the statute"). However, because DOH never attempted to inspect the NWIPC pursuant to this statute, the Court will not decide whether it applies to the suspected conditions at the NWIPC. A state court would be better suited to interpret the language of this statute.

GEO argues: "Whether DOH might be entitled to some relief based on the version of events proffered in its brief," namely, seeking to enter and inspect the NWIPC pursuant to RCW 43.70.170, "is a purely hypothetical question." Dkt. 37 at 6–7. The Court agrees. Under these circumstances, the Court is forced to speculate as to whether GEO would have denied DOH access to the NWIPC had the agency cited and explained the suspected conditions that constitute a threat to the *public* health under RCW 43.70.170. *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838–39 (9th Cir. 2014) ("Concrete legal issues require more than mere 'hypothetical threat[s]' and where we can 'only speculate' as to the specific activities in which a party seeks to engage, we must dismiss a claim as nonjusticiable." (quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 90 (1947))). DOH accordingly fails to establish an injury in fact.

DOH similarly fails to demonstrate that its asserted injury is "fairly traceable" to *GEO's* conduct. *Spokeo*, 578 U.S. at 338. By never requesting to inspect the NWIPC pursuant to RCW 43.70.170, DOH's asserted injury—not having had an opportunity to conduct such an inspection—is traceable to only itself.

For these reasons, DOH lacks constitutional standing to seek an injunction requiring GEO to provide it access to the NWIPC so that the agency may inspect the facility under RCW 43.70.170. This claim is accordingly **DISMISSED without prejudice** and **without leave to amend**.[9] DOH's motion for a preliminary injunction on this basis is **DENIED as moot**.

## III.  ORDER

Therefore, it is hereby **ORDERED** that DOH's motion to remand, Dkt. 10, motion to consolidate, Dkt. 16, and motion for a preliminary injunction, Dkt. 24, are **DENIED**. Because DOH lacks constitutional standing to seek an injunction requiring GEO to

---

[9] The Court notes that, when a case is removed to federal district court and "it appears the district court lacks subject matter jurisdiction, *the case* shall be remanded." 28 U.S.C. § 1447(c) (emphasis added). The "ordinary reading of [this] language indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply one claim within a case." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998); *accord Kim v. Walmart, Inc.*, No. 2:22-CV-08380-SB-PVC, 2023 WL 196919, at *3 (C.D. Cal. Jan. 13, 2023) (Section 1447(c) "authorizes remand of a 'case,' not individual claims"). Because the Court has subject matter jurisdiction over DOH's claim advanced pursuant to HB 1470 § 3, this statute does not apply.

Nor may the Court sever and remand DOH's claim asserting a violation of RCW 43.70.170 under 28 U.S.C. § 1441(c), which authorizes severance and remand of individual claims when a defendant removes an action containing "a *claim* arising under the Constitution, laws, or treaties of the United States" and "a claim not within the original or supplemental jurisdiction of the district court." (Emphasis added). Because DOH does not assert any claim arising under federal law and GEO removed this matter based on a colorable federal *defense* under the federal officer removal statute, § 1441(c) also does not apply.

Under these circumstances, the proper remedy is dismissal without prejudice.

provide the agency access to inspect the NWIPC under RCW 43.70.170, DOH's claim seeking such an injunction is **DISMISSED without prejudice** and **without leave to amend**.

The Court encourages the parties to consult and agree on a resolution to this case in light of this order.

Dated this 1st day of July, 2024.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 21